STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v.
ELIZABETH BAIN, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued April 8, 1986—Decided July 8, 1986.

Before Judges MICHELS and STERN.

*Michael D'Alessio, Jr.* argued the cause on behalf of appellant.

*John J. Scaliti,* Deputy Attorney General, argued the cause on behalf of respondent (*W. Cary Edwards,* Attorney General, attorney).

PER CURIAM.

Defendant and others were indicted for conspiracy to possess, to possess with intent to distribute and to distribute controlled dangerous substances in violation of *N.J.S.A.* 24:21–24. The conspiracy count charged as overt acts involving defendant that defendant and one Robert Morrison " ... used telephone facility (201) 499–7104 located at 88 Patricia Avenue, Woodbridge New Jersey, to engage in a telephonic communication regarding the illegal possession, possession with the intent to distribute and distribution of controlled dangerous substances, to wit, cocaine" and that defendant and Mr. Morrison on April 18, 1981, " ... met at the Sheraton Inn located in Elizabeth, New Jersey for the purpose of transferring a quantity of controlled dangerous substances, to wit, cocaine." Others named as co-conspirators were indicted in other counts of the indictment, but defendant was not. We need not address whether the overt acts had to be alleged in the indictment. *But see N.J.S.A.* 2C:5–2d. The indictment contained 16 counts involving 34 defendants. The first count, charging conspiracy, contained 31 overt acts of which defendant was named in only two. Defendant was tried alone and convicted. Following the denial of her motion for new trial, she was sentenced to two years in the custody of the Commissioner of Corrections. She appeals and argues:

POINT I DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL SHOULD HAVE BEEN GRANTED.

POINT II THE COURT FAILED IN NOT CHARGING THE JURY, ON REQUEST, THAT DEFENDANT'S PARTICIPATION IN THE CONSPIRACY, UNDER THE STATE'S CLEARLY ARTICULATED THEORY OF THE CASE, REQUIRED A FINDING THAT SHE ACTUALLY WAS IN POSSESSION OF AND DELIVERED COCAINE ON APRIL 18.

POINT III THERE WAS NO FACTUAL BASIS FOR ORDERING A TWENTY–FOUR HOUR WIRETAP UPON THE MORRISON PHONE.

■ Our careful review of the record convinces us that the arguments raised in Points II and III are clearly without merit. *R.* 2:11–3(e)(2). As to Point II, *see State v. Wilbely,* 63 *N.J.* 420, 422 (1973); *N.J.S.A.* 2C:5–2(b), (c). As to Point III, *see also*

*State v. Catania,* 85 *N.J.* 418 (1981). A 24-hour wiretap was authorized in this case for a period of no more than twenty days in light of the facts detailed in Officer Dixon's forty-one page affidavit.

The difficult issue raised by this appeal relates to whether defendant's motion for judgment of acquittal should have been granted on the ground that there was insufficient proof identifying the defendant as the Elizabeth Bain referred to in the evidence. Giving the State the benefit of all legitimate inferences, we have no hesitation in concluding that the record adequately supports a finding that one Elizabeth Bain was a conspirator in the illegal possession and distribution of controlled dangerous substances, that she was in the Sheraton Inn in Elizabeth on April 18, 1981 for the purpose of distributing drugs and that she did so. The real question in this case, however, concerns the sufficiency or existence of proofs, if any, relating to whether the Elizabeth Bain referred to in the evidence was the Elizabeth Bain on trial in the courtroom. At the end of the State's case, counsel moved for judgment of acquittal arguing, in part, that there was no evidence identifying defendant as the person referred to in the evidence.

There were proofs, in terms of recorded conversations, to the effect that Ms. Bain had arrived at the Sheraton Inn and that Mr. Morrison went there to meet her. He was observed entering the room registered to Ms. Bain with an attache case and leaving with the same attache case approximately ten minutes later. The judge concluded:

I'm satisfied a reasonable jury could find that a conspiracy existed between Robert Morrison and others to possess—to possess with intent to distribute and to distribute controlled dangerous substances.

A reasonable jury could find that Betty Bain was known to Morrison, based upon the information contained in the telephone books. And was in touch with Morrison, the Morrison residence by phone on April 18th. Could find that she arrived pursuant to the plan at Newark Airport and took lodging at the Sheraton. That she was visited briefly upon her arrival by Morrison. And that she was in agreement with him to engage in conduct which constitutes possession, possession with intent to distribute or distribution of controlled dangerous substance.

A reasonable jury could infer that she was the courier from the telephone calls before and after her arrival and the meeting. And that she agreed to aid Morrison in a distribution plan.

Defendant's motion for new trial was also denied. The judge indicated that the evidence of defendant's name on the hotel registration constituted sufficient proof of identification.

The critical issue before us is not whether there is sufficient evidence that one Elizabeth Bain was a conspirator. Rather, the issue is whether the Elizabeth Bain on trial was the person to whom the proofs related.

■ We start by noting that there are descriptions in the transcript of persons involved with the transactions under consideration. We have no way of knowing whether the defendant, not described for purposes of the record, may fit any of the descriptions. The Prosecutor, in his summation, referred to one of the descriptions but did not directly suggest that it fit the description of defendant in the courtroom.[1] We suggest that in similar circumstances, where an issue exists as to whether the defendant in the courtroom is the person being described by witnesses at trial, the record should contain a description for purposes of appellate review. We need not pursue this subject herein, however, because we affirm the conviction for reasons hereinafter stated.

---

[1] Investigator Nicholas Lombardo at one point stated " ... I recall Mr. Morrison met in the lobby of the Sheraton with a female which I described as in her thirties with curly brown hair and that they went up to a particular room." He subsequently stated, "Mr. Morrison proceeded from his residence to the Sheraton Inn where he picked up this individual known to us as Vic or the Captain. And his companion, a woman companion.... This lady ... was in her mid-twenties. A very dark complexion, long dark hair, very attractive looking. Very well dressed. I recall only that she appeared to me to be of like a Polynesian descent of some sort." Lombardo also observed Vic and this lady companion board a plane for Fort Lauderdale. In his summation, the prosecutor referred to the testimony of "the young lady that was with Vic," apparently to support the credibility of Detective Dixon's recollection in the absence of information in his written reports.

■ Upon a motion for judgment of acquittal under *R.* 3:18–1 the State is entitled to all reasonable and legitimate inferences from the evidence for purposes of determining whether a reasonable jury could find defendant guilty beyond a reasonable doubt. *See State v. Martinez,* 97 *N.J.* 567, 571–572 (1984); *State v. Reyes,* 50 *N.J.* 454 (1967). However, it must be remembered that "the State's right to the benefit of reasonable inference cannot be used to reduce the State's burden of establishing the essential elements of the offense charged" and defendant's identification as the perpetrator, by proof beyond a reasonable doubt. *State v. Martinez, supra,* 97 *N.J.* at 572. *See also State v. Green,* 86 *N.J.* 281, 291–294(1981). As noted, we have no difficulty in concluding under the facts and inferences legitimately drawn therefrom that one Elizabeth Bain was involved as a co-conspirator in this case. The real question is whether the defendant in the courtroom was the Ms. Bain described in the evidence.

"Ordinarily, identity of name bespeaks identity of person, particularly when the name is not in common use." *State v. Bucich,* 134 *N.J.Super.* 111, 116 (App.Div.1975), certif. den. 68 *N.J.* 280 (1975). However, we do not believe that cases like *Bucich* and *State v. Russell,* 135 *N.J.Super.* 154 (Cty.Ct.1975), aff'd o.b. 137 *N.J.Super.* 219 (App.Div.1975) dealing with motor vehicle violations, control the disposition of this case. This case is quite distinguishable from the situation where the driver of a motor vehicle is handed a summons by a police officer at the time of the alleged violation and presumably is the person who responds to that summons. *See also State v. Kay,* 151 *N.J.Super.* 255 (Cty.Ct.1977). Here, the defendant was arrested or taken into custody after the conduct alleged in the overt acts referring to her had been completed, and there was no direct testimony that the person so arrested was an individual observed in New Jersey on or about April 18, 1981.

We have no occasion, on defendant's appeal, to address the propriety of any evidentiary ruling.[2]  However, the fact of the matter remains that while the judge permitted introduction of a room registration and Visa card payment for same in the name of Ms. Bain, there is no evidence that the signature or writing relating to the room registration was that of the defendant in the courtroom.  Moreover, while tape recordings were introduced involving an alleged communication between Betty Bain and co-defendant Morrison, and otherwise referring to Ms. Bain, there was no evidence introduced before the jury that the voice of the person purporting to be or allegedly Ms. Bain on the tape was that of the defendant in the courtroom.[3]

In *State v. Russell, supra,* defendant was convicted in municipal court of drunk driving and argued on the trial *de novo* that the absence of a formal in-court identification of her as the driver warranted reversal of the conviction.  Judge Pressler, then sitting in the County Court, rejected the argument, as follows:

The precise question here presented, that is, whether a defendant can be identified by name only where his identity is not otherwise in apparent dispute, has not been dealt with by our courts nor, apparently, by any other jurisdiction with the exception of Indiana, which has consistently held such form of identification to be sufficient under circumstances similar to those here.  See *State v. Schroeppel,* 240 *Ind.* 185, 162 *N.E.*2d 683 (Sup.Ct.1959); *Preston v. State,* 259 *Ind.* 353, 287 *N.E.*2d 347 (Sup.Ct.1972); *Stevenson v. State* [162 *Ind.App.* 222] 318 *N.E.*2d 573, 576 (Ind.App.1974) (not yet officially reported).  The Indiana rule is based upon the assumption that defendant is, in fact, in court during the trial, as required by Indiana practice, and its application apparently requires that a state's witness has testified to circumstances evidencing his personal knowledge of who the defendant is, *i.e.,* that the person apprehended and the person charged and the person whose name he refers to as defendant and the person present in the courtroom are, in fact, all one and the

---

[2]We must decide the issues on the evidence before the jury, whether or not other evidence was improperly excluded.  *See Sanabria v. United States,* 437 *U.S.* 54, 98 *S.Ct.* 2170, 57 *L.Ed.*2d 43 (1978); *State v. Lynch,* 79 *N.J.* 327 (1979).

[3]Defense counsel successfully objected to having defendant speak so that a witness could relate the voice with that on the tape.  Counsel suggested that the jury be permitted to make a comparison, but that was not pursued by the Prosecutor.

same. From such testimony the trier of the fact clearly may draw the inference that the named defendant is in fact the offender. See *Evid.R.* 1(2). This court agrees with the soundness of the Indiana rule and the appropriateness of its application here. [*Id.* 135 *N.J.Super* at 157–158]

The Indiana cases cited in Judge Pressler's opinion are distinguishable. Without addressing any subject concerning the scope of the Sixth Amendment with respect to motor vehicle offenses, *see* and *compare e.g., State v. Tropea,* 78 *N.J.* 309 (1978); *State v. DeLuca,* 208 *N.J.Super.* 422 (App.Div.1986), the Indiana cases deal with criminal prosecutions and involve witnesses who testified that the "defendant" acted in a particular way or, referring to a person with defendant's name, said that they saw that named person conducting some act. Here, there was no testimony to the effect that any State's witness saw the defendant in the courtroom do anything; nor does there appear to be, from our review of the record, any evidence in the form of direct testimony by a witness that he or she previously observed the Elizabeth Bain who was then on trial. Certainly no witness testified that the Elizabeth Bain in the courtroom was ever observed in New Jersey. This is not a case where the record reflects, before the jury or as a result of any proceeding outside the presence of the jury, that the witness looked at the defendant when he or she said that "Ms. Bain" or "Elizabeth Bain" did something; that type of evidence may support inferences which do not appear in this record.

Similarly, when the court rejected the State's request to have defendant read spoken words so that Detective Dixon could endeavor to identify her voice as that person on the tape, the State apparently declined to ask for a voice identification so that the jury could make such an evaluation. *But see United States v. Wade,* 388 *U.S.* 218, 87 *S.Ct.* 1926, 18 *L.Ed.*2d 1149 (1967); *State v. Green,* 209 *N.J.Super.* 347 (App.Div.1986) and cases collected therein. In the absence of a voice identification or a handwriting sample comparing defendant's with that on the registration, *see Gilbert v. California,* 388 *U.S.* 263, 87 *S.Ct.* 1951, 18 *L.Ed.*2d 1178 (1967); *United States v. Mara,* 410

*U.S.* 19, 93 *S.Ct.* 774, 35 *L.Ed.*2d 99 (1973); *see also State v. Cary*, 49 *N.J.* 343 (1967), the State, in essence, endeavors to sustain the conviction on the basis of an inference that the person referred to in the testimony was defendant on trial.

▮ The very narrow issue before us is whether a legitimate inference can be drawn from the fact that defendant, in the courtroom during the trial and admittedly having the same name as the person identified in the tapes and in the evidence, had the same name as the person who was registered at the Sheraton Inn and who was a co-conspirator in the unlawful transactions. The inference flows from the jury's knowledge of an ongoing investigation which provides support for the conclusion that the person charged was the subject of the investigation. While the State has the burden of proving identification beyond a reasonable doubt, *see e.g., In re Winship*, 397 *U.S.* 358, 90 *S.Ct.* 1068, 25 *L.Ed.*2d 368 (1970); *State v. Green, supra; State v. Frey*, 194 *N.J.Super.* 326 (App.Div.1984); *see also State v. Breakiron*, 210 *N.J.Super.* 442 (App.Div.1986), we conclude that there was evidentiary sufficiency in the absence of other evidence to permit a determination based upon legitimate inferences to sustain the conviction. *Cf. In re Degina*, 94 *N.J.Super.* 267, 273 (App.Div.1967), certif. den. 49 *N.J.* 368 (1967) ("... initial presumption of identity of person arising from the identity of name") (habeas corpus proceeding). *State v. Bucich, supra.* [4] In this case, two witnesses for the State testified that they went to Florida with arrest warrants, including one for Ms. Bain. Defense counsel wanted to show that defendant, unlike other defendants, did not flee and turned herself in to authorities in New Jersey. Investigator Lombardo testified that he

---

[4]We do not hold that, as a matter of constitutional law or otherwise, the State's burden is or can be sustained merely by an indication of the similarity of name unless the defendant comes forward with evidence to the contrary. Nor do we hold that the defendant has any burden of producing evidence on the subject. Moreover, we do not suggest that in cases such as this the State should not offer additional or other evidence to relate the defendant on trial to the person referred to in the evidence.

went to Ms. Bain's residence with an arrest warrant and made efforts to locate her. Detective Dixon testified that he went to the Florida home of the Ms. Bain who had been registered at the Sheraton Inn but could not locate her. In response to a question from defense counsel, Dixon stated his belief that defendant was not extradited and that she "voluntarily turned herself in on this charge up here." Given this testimony, we are satisfied that the State sustained its burden of proving that defendant on trial was the Ms. Bain referred to in the testimony.

Accordingly, the judgment of conviction is affirmed.